UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

Corey Douglas Harlson,

Plaintiff,

v.

St. Francis Reserve known as "J. Hall,"

Defendant.

Civ. File No. 01-1773 (PAM/RLE)

**MEMORANDUM AND ORDER**

---

This matter is before the Court on Defendant's Motion for Summary Judgment on all of Plaintiff's claims. Defendant argues that the doctrine of qualified immunity protects him from liability in this case. For the following reasons, the Court grants the Motion.

**BACKGROUND**

On January 12, 2000. Plaintiff Corey Harlson and a friend were riding their snowmobiles around St. Francis, Minnesota. Defendant Jeffrey Hall was working as a reserve St. Francis police officer with full-time St. Francis Police Officer Chris McClish. Hall had been a reserve police officer for ten years prior to the incident giving rise to the Complaint in this case. The two officers observed Harlson and his friend run a stop sign on their snowmobiles. The officers then pursued Plaintiff with their emergency lights activated. Harlson's companion pulled over almost immediately, but Harlson left him behind and continued to ride his snowmobile. Hall and McClish believed that Harlson was fleeing. While McClish stopped along side Harlson's companion, Hall followed Harlson. Eventually,

APR 23 2003
FILED
RICHARD D. SLETTEN, CLERK
JUDGMENT ENTD APR 23 2003
DEPUTY CLERK

Harlson stopped the snowmobile in a rural area, outside the vicinity of other persons, approximately one-quarter to one-half mile from where McClish had stopped Harlson's companion. Hall approached Harlson and shouted at him to get off of his machine. Hall did not feel safe and was concerned that Harlson may have a weapon. Hall grabbed Harlson's arm and held it behind Harlson's back. Hall then patted Harlson down for weapons. Once Hall realized that Harlson posed no threat, he released Harlson. Soon after, other police officers arrived, including a close friend of Harlson's who addressed him by name.

Harlson brought a Complaint against Hall, the City of St. Francis, and St. Francis Police Chief Byron Froh. The other two original defendants were dismissed by an order of this Court on October 8, 2002, pursuant to a stipulation of parties. Plaintiff originally brought claims for deprivations of his constitutional rights under the First, Fourth, Fifth, and Fourteenth Amendments, assault, battery, and negligence. In his response to Defendant's Motion, Harlson notes his intent to dismiss his claims for deprivations of his First, Fifth, and Fourteenth Amendment rights. The remaining claims are for violations of the Fourth Amendment search and seizure requirements, assault, battery, and negligence.

Defendant moves for summary judgment on these claims. First, Defendant argues that qualified immunity protects him from Plaintiff's Fourth Amendment claims of excessive force and unreasonable seizure. Second, Defendant argues that the doctrine of official immunity protects him from Plaintiff's common-law tort claims. Finally, the parties dispute whether Plaintiff may recover punitive damages.

## DISCUSSION

### A. Standard of Review

Hall moves for summary judgment pursuant to Rule 56(c), which provides that such a motion shall be granted only if "there is no genuine issue as to any material fact and . . . the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). When considering a motion for summary judgment, the Court must view the evidence and the inferences that may be reasonably drawn from the evidence in the light most favorable to the non-moving party. Enter. Bank v. Magna Bank, 92 F.3d 740, 747 (8th Cir. 1996).

The burden of demonstrating that there are no genuine issues of material fact rests on the moving party. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). If the moving party has carried its burden, the non-moving party must demonstrate the existence of specific facts in the record that create a genuine issue for trial. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 256 (1986); Krenik v. County of LeSueur, 47 F.3d 953, 957 (8th Cir. 1995).

### B. Federal Claims

The only remaining federal claims are for violations of Harlson's Fourth Amendment rights. First, Harlson argues that Hall had no authority to stop him. Second, Harlson claims that Hall used excessive force.

In determining whether a person had the authority to make an arrest, courts look to state statutes governing who may make an arrest and who may not. E.g., United States v. Carter, 523 F.2d 476, 478 (8th Cir. 1975) (holding that an arrest by Treasury Department

agents must be evaluated under Nebraska laws governing arrests by private persons). The Minnesota Supreme Court has held that reserve officers such as Hall have the same authority to make an arrest that a private citizen does. Lake Minnetonka Conservation Dist. v. Horner, 617 N.W.2d 789, 794 (Minn. 2000) ("Because we hold that special deputies are not peace officers, we consider their actions as equivalent to those of private citizens.").

Minnesota law provides for private arrests when a person personally observes another person committing a misdemeanor.

> A private person may arrest another: (1) for a public offense committed or attempted in the arresting person's presence; (2) when the person arrested has committed a felony, although not in the arresting person's presence; or (3) when a felony has in fact been committed, and the arresting person has reasonable cause for believing the person arrested to have committed it.

Id. (interpreting Minn. Stat. § 629.37). In this case, Hall personally observed Harlson run a stop sign and then flee from the pursuit of a police officer. Therefore, Harlson claims that Hall had the requisite probable cause under Minnesota law to stop and arrest Harlson, making the arrest a valid one.

Harlson next contends that Hall applied excessive force. Specifically, Hall roughly pinned Harlson's arm behind his back and shouted directions at him, including profanities. This force, however, does not constitute a violation of the Fourth Amendment. "[N]ot every push or shove violates the Fourth Amendment," and the test for excessive force "is whether the officers' actions are 'objectively reasonable' in light of the facts and circumstances confronting them, without regard to their underlying intent or motivation." Guite v. Wright,

147 F.3d 747, 750 (8th Cir. 1998) (quoting Graham v. Connor, 490 U.S. 386, 396-97 (1989)). Factors to consider include: "the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight." Winters v. Adams, 254 F.3d 758, 765 (8th Cir. 1999) (quoting Graham, 490 U.S. at 396).

In this case, the crimes that Hall suspected Harlson of committing, a traffic violation and fleeing, would not warrant the use of serious force. See Kukla v. Hulm, 310 F.3d 1046, 1050 (8th Cir. 2002) (finding that question of fact existed on whether police officer exerted excessive force when, after arrest for traffic violation, he forced suspect against a truck, twisted his arm, and raised it high behind his back injuring his collar bone, shoulder, neck, and wrist).

The use of force is also not appropriate given the absence of the second factor, whether the suspect poses an immediate threat to the safety of officers or others. Hall states that he feared for his safety and worried that Harlson may have had a weapon. However, Harlson's flight and disregard for traffic signals do not in themselves indicate that he posed any immediate threat to the safety of the officers or others.

While the first two factors are absent, Harlson's attempt to resist or evade arrest warrants the use of some force. See, e.g., Brant v. Davis, 191 F.3d 887, 892 (8th Cir. 1999). In Edwards v. Giles, 51 F.3d 155 (8th Cir. 1995), a police officer chased a suspect around the corner of a house, where two other police officers blocked his path. The suspect stopped

and put his hands on his head in compliance. One of the officers threw the suspect to the ground, and the officers handcuffed and shackled him. The suspect injured his abdomen when he struck the ground. The court affirmed summary judgment on the excessive force claims, concluding that the officers did not apply excessive force.

The instant case falls somewhere between Edwards and Kukla. Unlike the plaintiff in Kukla, Harlson and the plaintiff in Edwards fled from pursuing officers. In addition, the force applied in Kukla exceeds the force applied in Edwards and in this case. The force exerted by Hall in detaining Harlson does not meaningfully exceed the force applied by the arresting officers in Edwards. Nor does it surpass the amount of force that a reasonable officer would have applied under similar circumstances. Therefore, summary judgment is appropriate on Harlson's federal claims.

### C. Qualified Immunity

Even assuming that a question of fact remained of whether Hall used excessive force, his actions would nevertheless be protected by qualified immunity. Initially, the Court finds that qualified immunity extends to reserve officers, like Hall. In addition, the doctrine of qualified immunity protects Hall from liability for his actions in this case.

First, Plaintiff argues that the doctrine of qualified immunity does not apply to reserve officers. Instead, Harlson posits that qualified immunity shields only public officials, not reserve officers. (Opp'n Mem. at 16, 21.) While there are only a few cases of reserve police officers asserting a qualified immunity defense, courts have either assumed that immunity

extends to reserve officers, or explicitly held that it does. See, e.g., Garionis v. Newton, 827 F.3d 306, 310 (8th Cir. 1987) (holding reserve deputy sheriff entitled to qualified immunity); Miskovich v. Indep. Sch. Dist. 318, 226 F. Supp. 2d 990, 1031-32 (D. Minn. 2002) (finding that the reserve officer's actions were ministerial and thus not subject to immunity). Qualified immunity extends to Reserve Officer Hall, and he is free from liability if his "conduct [did] not violate clearly established statutory or constitutional rights of which a reasonable person would have known." Winters, 254 F.3d at 766 (quoting Harlow v. Fitzgerald, 457 U.S. 800, 818, (1982)).

To determine the merits of the excessive force claim, the Court considered whether the force applied was unreasonable. Qualified immunity presents a different question. The inquiry is whether the officer's belief in the legality of his conduct was reasonable. Therefore, in a case like the one before the Court here, an officer can reasonably believe that his use of force was reasonable, and therefore legal, even if, in actuality, the force he applied was excessive.

On a motion for summary judgment, the Court undertakes a three-part inquiry to determine whether a defendant is entitled to qualified immunity. Lambert v. City of Dumas, 187 F.3d 931, 935 (8th Cir.1999). First, the plaintiff must assert a violation of a constitutional or statutory right. Second, that right must be clearly established. Third, taking the facts in the light most favorable to the plaintiff, "there must be no genuine issues of material fact as to whether a reasonable official would have known that the alleged action

violated that right." Id.; see also Hill v. Scott, No. 01-1063, 2002 WL 1949749, *3 (D. Minn. Aug. 19, 2002) (Magnuson, J.).

In this case, only the third requirement is disputed. See Guite, 147 F.3d at 750 (generally citing Graham, 490 U.S. 386) ("The right to be free from excessive force is a clearly established right under the Fourth Amendment's prohibition against unreasonable seizures of the person.") A reasonable officer would have concluded, as Hall did, that Harlson was intentionally trying to evade the police. Similarly, a reasonable officer would have concluded that some force was necessary to prevent Harlson from trying to flee a second time. The record presents no fact issue on whether qualified immunity protects Hall's actions because a reasonable officer would not have known that the Fourth Amendment prevented him or her from applying that amount of force.

**D. State-Law Claims and Punitive Damages**

Because the Court has granted summary judgment on the federal claims, it need not decide the state claims or the related issue of punitive damages. Under 28 U.S.C. § 1367(a), federal courts may assert supplemental jurisdiction over state claims when a federal claim is properly before the court. However, when all federal claims have been dismissed, the court has discretion to dismiss the state claims as well. 28 U.S.C. § 1367(c)(3) (providing that the Court "may decline to exercise supplemental jurisdiction over a claim . . . if the [Court] has dismissed all claims over which it has original jurisdiction."). The Court's discretion should be informed by consideration of the principles of judicial economy,

convenience, fairness, and comity. E.g., Grain Land Coop v. Kar Kim Farms, Inc., 199 F.3d 983, 993 (8th Cir. 1999). These factors will generally weigh in favor of declining to exercise jurisdiction. United Mine Workers v. Gibbs, 383 U.S. 715, 726 (1966) (dismissal of state claims strongly encouraged when federal claims are dismissed prior to trial); Grain Land Coop, 199 F.3d at 993; American Civil Liberties Union v. Florissant, 186 F.3d 1095, 1098-99 (8th Cir. 1999). In this case, each of the factors support the Court's decision to decline to exercise pendant jurisdiction over the state-law claims.

**CONCLUSION**

No questions of fact exist on whether Hall exerted an unreasonable or excessive amount of force in detaining Harlson. Furthermore, even assuming that there was a question of fact on that issue, Hall was reasonable to believe that his use of force did not violate the Fourth Amendment. Therefore, the doctrine of qualified immunity protects Hall's actions.

Accordingly, for the foregoing reasons, and upon all of the files, records, and proceedings herein, **IT IS HEREBY ORDERED** that Defendant's Motion for Summary Judgment (Clerk Doc No. 14) is **GRANTED**. The federal counts are dismissed with prejudice and the remaining state counts are dismissed without prejudice.

**LET JUDGMENT BE ENTERED ACCORDINGLY.**

Date: April 23, 2003

Paul A. Magnuson
United States District Court Judge

# UNITED STATES DISTRICT COURT
# DISTRICT OF MINNESOTA

## CIVIL NOTICE

DATE MAILED TO COUNSEL/PRO SE PARTIES:

The purpose of this notice is to summarize the time limits for filing with the District Court Clerk's Office a Notice of Appeal to the Eighth Circuit Court of Appeals from a final decision of the District Court in a civil case.

***This is a summary only. For specific information on the time limits for filing a Notice of Appeal, review the applicable federal civil and appellate procedure rules and statutes.***

Rule 4(a) of the Federal Rules of Appellate Procedure (Fed. R. App. P.) requires that a Notice of Appeal be filed within:

1. Thirty days (60 days if the United States is a party) after the date of "entry of the judgment or order appealed from;" or

2. Thirty days (60 days if the United States is a party) after the date of entry of an order denying a timely motion for a new trial under Fed. R. Civ. P. 59; or

3. Thirty days (60 days if the United States is a party) after the date of entry of an order granting or denying a timely motion for judgment under Fed. R. Civ. P. 50(b), to amend or make Additional findings of fact under Fed. R. Civ. P. 52(b), and/or to alter or amend the judgment under Fed. R. Civ. P. 59; or

4. Fourteen days after the date on which a previously timely Notice of Appeal was filed.

If a Notice of Appeal is not timely filed, a party in a civil case can move the District Court pursuant to Fed. R. App. P. 4(a)(5) to extend the time for filing a Notice of Appeal. This motion must be filed no later than 30 days after the period for filing a Notice of Appeal expires. If the motion is filed after the period for filing a Notice of Appeal expires, the party bringing the motion must give the opposing parties notice of it. The District Court may grant the motion, but only if excusable neglect or good cause is shown for failing to file a timely Notice of Appeal.

C:\FORMS\APPEAL NO. CIV
Rev. August 11, 1995

# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

### Prehearing Conference Program

The United States Court of Appeals for the Eighth Circuit has established an early intervention Prehearing Conference Program. The purpose of the program is twofold: (1) to facilitate settlement discussions in civil cases by providing an impartial atmosphere for an open discussion of the case and alternative methods of disposition and (2) to promote the delineation of issues, early resolution of procedural problems, and effective administration of an appeal throughout the appellate process. See 8th Cir. R. 33A.

The program is directed by Mr. John Martin. Mr. Martin screens newly filed appeals based on information furnished by both appellants and appellees in the court's Appeal Information Forms A and B. Contact with counsel is by telephone and in personal conferences held in several cities throughout the Circuit. All communications with Mr. Martin are confidential. Counsel can openly discuss and evaluate the issues and explore alternatives in a non-adversarial setting without fear that the subsequent processing of the appeal or ultimate disposition of the case will be adversely affected by participation in the program.

Participation in the program is voluntary. However, the Court strongly encourages your participation and cooperation. Over the past twenty years, the program has enabled many appellate litigants to achieve mutually satisfactory resolution of certain issues or an overall settlement prior to progressing through all stages of the appellate process. Issue delineation enables counsel to focus only on those issues that need judicial resolution. The program has helped relieve the ever-increasing caseload confronting the Court, and it has also saved litigants and attorneys substantial amounts of time and money.

In order for the program to function effectively certain information <u>must</u> be provided at the initiation of the appeal. *Eighth Circuit Rule 3B directs each civil appellant to: (1) file a completed Appeal Information Form A with the Notice of Appeal at the time the Notice is filed with the District Court clerk and (2) forward a copy of the completed Form A and a copy of Appeal Information Form B to the appellee for completion.* Appellee may complete Form B and send it to the clerk of the Court of Appeals. If you have any questions about the Prehearing Conference Program or the Appeal Information Forms, please contact Mr. Martin at (314)-539-3669.

Forms A and B are available from the District Court clerk and the Court of Appeals clerk and can be found at the Court of Appeals' web site at: www.ca8.uscourts.gov

*June 1, 2000*